THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* PROVIDENCIO LAGUNA RODRÍGUEZ, Defendant and Appellant.

 No. CR-64-78.  Decided November 24, 1965.

*Federico Cordero* counsel appointed by the Supreme Court to assist defendant on appeal. *J. B. Fernández Badillo, Solicitor General,* and *Rodolfo Cruz Contreras, Assistant Solicitor General,* for The People.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

■■ Only a few days ago we adopted, for the administration of our criminal justice, a rule rejecting the confession of an accused or suspect or the admissions which substantially prejudice him obtained while in custody of the police or of competent authority during his interrogation for the purpose of obtaining incriminating statements, in the absence of warnings on his constitutional right to remain silent and not to incriminate himself and to obtain assistance of counsel. *Rivera Escuté* v. *Delgado, Warden, ante,* p. 746. However, this exclusionary rule does not bar, *in all cases and under all circumstances,* the admission of incriminating statements of an accused or suspect merely because they have been made to a policeman or to a district attorney. That is essentially the question raised in this appeal, wherefore it is necessary to sum up the facts which have given rise to the contention.

Providencio Laguna Rodríguez, appellant herein, was charged with murder in the first degree for assaulting Cristino Medina Rosa, known as Prisco, with a contusive instrument, causing injuries and wounds which produced his death. As part of the prosecution evidence there was offered the testimony of policeman Fernando Vélez Arroyo, who testified that he received a call from the municipal hospital of Naguabo where Medina, wounded, had been removed; that among the persons who were there was Luis Faustino Dávila from whom he received certain information, as a result of which "I went to the ward of Mariana and reached the residence of Providencio, where I knocked at the door and he asked me who I was and I said 'it's the police.' Then he came

and opened the door and explained to me what had happened, that he had to beat Cristino with a club as a result of a . . . of an accusation that Cristino had made against him, some rum which had been stolen from him; that he avenged the accusation, which in his opinion was an injustice." (Tr. Ev. 74–75.) On cross-examination he testified that when he arrived at appellant's house, before making the incriminating statements which have been copied, defendant told him that he was "expecting" him and that "he wanted to surrender himself" (Tr. Ev. 77), which he had not done before because he had no transportation.[1]

It should be noted that Luis Faustino Dávila, who testified before Policeman Vélez, had already testified that the night of the occurrence, around 3 a.m., he had run across appellant and that the latter had told him that he had beaten Cristino Medina. This was the information which Dávila transmitted to the public peace officer.

■ As may be seen, appellant's incriminating statements on the criminal agency and the motives of his action[2] were not made while he was in police custody and much less during his interrogation for the purpose of eliciting incriminating statements. The *Rivera Escuté* rule therefore is not applicable.

The judgment rendered by the Superior Court, Humacao Part, on October 18, 1962, will be affirmed.

---

[1] He also asserted on cross-examination that appellant Laguna complained to him that the deceased was drunk and had thrown stones at his sister's house. Naturally, the imputation of the commission of error is not extended to cover the admission of these exculpatory statements.

Appellant denied making the statements attributed to him.

[2] Indeed appellant could only complain of the admission of his statements on the motive, for his version of the facts was that of self-defense. And as to the motives, it is well to point out that the explanation attributed to him—vengeance for actions prior to his being charged with a violation of the Alcoholic Beverages Act—tended to establish the element of premeditation. The jury's verdict, however, was of murder in the second degree.